United States District Court
Southern District of Texas
**ENTERED**
August 29, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re JOHNNIE G. EICHOR, § | |
| § | |
| Debtor. § | |
| § | CIVIL ACTION NO. 4:22-CV-3274 |
| § | |
| BENSON WYLY, *et al.*, § | ADVERSARY CASE NO. 21-3937 |
| § | |
| Appellants. § | |

**MEMORANDUM OPINION AND ORDER**

This is a bankruptcy appeal. The appellants, Benson and Pam Wyly ("the Wylys"), sued the bankruptcy debtor, Johnnie Eichor ("Eichor"), in Texas state court and obtained a default judgment against him. Eichor then filed an adversary complaint in which he alleged that the Wylys' state-court action violated the discharge injunction entered in his bankruptcy case. After a bench trial, the bankruptcy court found that the Wylys willfully violated the discharge injunction and awarded actual damages and attorney's fees to Eichor. The Wylys have appealed, and the Court **AFFIRMS** the bankruptcy court's judgment.

**I.      BACKGROUND**

Eichor and the Wylys had been friends for many years when Eichor mentioned to Benson Wyly that his demolition business was struggling and that he was thinking of borrowing money from his mother and stepfather. (Dkt. 2-8 at pp. 24, 167). As a result of this discussion, Eichor and the Wylys entered into a series of three agreements whereby Eichor purported to sell his house to the Wylys with the option to repurchase it. (Dkt. 2-4

at pp. 51–54, 110–12, 116–18).[1] The first agreement was dated June 25, 2015; the second, May 26, 2016; and the third, January 20, 2017. (Dkt. 2-4 at pp. 102, 111, 117). Eichor never transferred title to the Wylys, and he and his family continued to live in the house and pay the property taxes. (Dkt. 2-8 at pp. 32–33, 45, 59, 109, 114–15, 189–91).

Eichor fell behind on his property taxes, and five taxing districts filed a lawsuit against him in Texas state court in June of 2019. (Dkt. 2-4 at pp. 209–13). In October of 2020, the Wylys filed a petition in intervention in the taxing districts' suit and sued Eichor, asserting that Eichor had breached the third agreement with the Wylys—the one dated January 20, 2017—for the supposed purchase of his home. (Dkt. 2-4 at pp. 215–17). Initially, the Wylys did not serve the petition in intervention on Eichor. (Dkt. 2-8 at p. 149).

On November 1, 2020, Eichor filed a voluntary Chapter 7 bankruptcy petition and claimed a homestead exemption on his house. (Dkt. 2-9 at p. 19). The bankruptcy court issued Eichor's Chapter 7 discharge order and closed the bankruptcy case on February 9, 2021. (Dkt. 2-9 at pp. 85–88). Two months later, on April 6, 2021, the Wylys served Eichor with their petition in intervention from the taxing districts' state-court lawsuit. (Dkt. 2-4 at p. 224). In response, Eichor's counsel sent a letter to the Wylys' counsel stating that the Wylys had "violated the discharge injunction issued by the U.S. Bankruptcy Court by continuing with the intervention action." (Dkt. 2-5 at p. 17). Eichor's counsel's letter further explained that Eichor would not make an appearance in the Wylys' state-court

---

[1] Eichor's ex-wife executed the agreements as well, but she is not a party to these proceedings. The home, which Eichor purchased when he was single, was awarded to Eichor in the divorce because it was his separate property. (Dkt. 2-8 at p. 17).

action; that "[a]ny decision by the Brazoria District Court may be void[;]" and that, if the Wylys continued to prosecute their state-court action, Eichor's counsel would file an adversary proceeding that would "seek monetary damages, including attorneys' fees, against Mr. and Mrs. Wyly for their willful violation of the discharge injunction granted to Mr. Eichor." (Dkt. 2-5 at p. 18).

Eichor did not file an answer to the Wylys' suit; and, despite the warnings contained in Eichor's counsel's letter, the Wylys took a default judgment against him. (Dkt. 2-4 at p. 226). The Texas state court's default judgment provided that, because Eichor had breached his January 20, 2017 contract with the Wylys, the Wylys had "acquired all right, title and interest on [Eichor's house] as of April 20, 2017" and that Eichor had been "divested of all right, title and interest in the property that same day." (Dkt. 2-4 at p. 227). The Wylys then locked Eichor out of his house; Eichor came home one day to find the locks changed and a copy of the default judgment taped to the front door. (Dkt. 2-8 at pp. 17–19).

Eichor filed an adversary complaint in the bankruptcy court, alleging that the Wylys had violated the Chapter 7 discharge injunction in his bankruptcy case by continuing to prosecute their state-court action against Eichor after Eichor received his discharge order. (Dkt. 2-3 at pp. 1–29). The bankruptcy court held a bench trial. One of the witnesses was the Wylys' counsel, who engaged in the following exchange with the bankruptcy court:

> THE COURT: All right. I have a couple questions. Mr. Gross, do you regularly practice bankruptcy law?
>
> [COUNSEL]: No.
>
> THE COURT: All right. So before you went to the court and took the default judgment on 6/24/2021, other than your own

|||
|---|---|
| | independent analysis did you reach out to anyone to try and determine the effect that the Debtor's discharge had on you moving forward on 6/24/2021? |
| [COUNSEL]: | I did call the trustee and I asked if we could file something and asked what would we file, and something like an objection or whatever. And then I determined, you know, me going with the Bankruptcy Court, I didn't know how to do that. And then it was, be careful not to enter a ruling that disturbed a discharge order. |
| | So what I did then was I had looked at the petition and I reviewed it for Mr. Wyly's claim in this particular case, and I didn't see it. |
| | I knew that if the property—if Mr. Eichor did not own the property at the time he filed bankruptcy, if [Benson] Wyly was the owner, then I didn't think having a—the two thirty-ninth district court enter a declaration just of ownership at one particular time, I didn't think that declaration would interfere with the Bankruptcy Court's discharge. |
| THE COURT: | So do you have an understanding, and if you do have an understanding, what is that understanding, about the effect that a bankruptcy filing has on perfection of a lien or perfection of an interest? |
| [COUNSEL]: | I believe that if a bankruptcy discharge order, if there's money— |
| THE COURT: | No, I'm not talking about a discharge. I'm talking about filing date, petition date. Do you have an understanding—and if you don't, that's fine because you're not a bankruptcy practitioner. But do you have any sort of opinion as to when a bankruptcy petition is filed, how it affects perfection of let's say a security interest? |
| [COUNSEL]: | No. The—my understanding is limited to it just—you just—there's an automatic stay until— |

>THE COURT:           All right. Thank you.
>
>[COUNSEL]:           —it's over.
>
>Dkt. 2-8 at pp. 160–62.

After the bench trial, the bankruptcy court found that the three agreements whereby the Wylys purported to purchase Eichor's house were actually "disguised loans and not the purchase of an asset." (Dkt. 2-7 at p. 56). The bankruptcy court further found that, although the agreements between the Wylys and Eichor "were all intended to be secured loans between [Eichor] and [the Wylys]," the loans "were not and could not have been secured as they violated [Eichor's] homestead protections[.]" (Dkt. 2-7 at p. 48). As a result, the Wylys "held no security interest in [Eichor's house], there was no perfected lien, and [the Wylys] merely held an unsecured claim." (Dkt. 2-7 at p. 60). Consequently, the bankruptcy court found that the Wylys' suit against Eichor violated Eichor's discharge injunction:

> Simply stated the Court finds that any attempt to enforce the debts held by the [Wylys] post discharge, including an attempt to quiet title to [Eichor's house,] violated the discharge injunction. The debts held by the [Wylys] were unsecured, they had not perfected liens for the reasons stated herein. They were discharged in the Chapter 7. The [Wylys'] attempt to quiet title was simply an "end run" around the discharge injunction.
>
> Dkt. 2-7 at pp. 61–62.

Finally, the bankruptcy court found that the Wylys' violation of Eichor's discharge injunction was willful:

> [E]ven after being advised that the prosecution of the suit was a violation of the discharge injunction by Eichor's counsel, and that counsel intended to file suit on that basis, the Wylys willfully proceeded with obtaining a judgment in the Intervention Suit. Instead, if they believed that they were entitled to an exception from the discharge, the Wylys should have brought an action to obtain the requisite determination of that exception.
>
> . . .

> The Court finds that the Wylys willfully violated the discharge injunction in this case.
> Dkt. 2-7 at pp. 61–62.

The bankruptcy court found the Wylys liable for actual damages and attorney's fees and awarded title of Eichor's house to Eichor but declined to award punitive damages against the Wylys. (Dkt. 2-7 at p. 62). The Wylys appealed. (Dkt. 1).

## II.     BANKRUPTCY APPEALS

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted).

## III.    ANALYSIS

On appeal, the Wylys raise four arguments: (1) the bankruptcy court lacked subject matter jurisdiction over the dispute regarding title to Eichor's house; (2) the Wylys did not

violate the discharge injunction by pursuing "a purely in rem" state-court action; (3) the state-court default judgment is not void; and (4) even if the Wylys violated Eichor's discharge injunction, the evidence was insufficient to show "that they are liable for civil contempt." (Dkt. 3 at p. 2). The Court disagrees with the Wylys' contentions.

*—The bankruptcy court properly exercised jurisdiction.*

The Wylys first challenge the bankruptcy court's exercise of subject matter jurisdiction. Eichor brought his adversary proceeding against the Wylys under Sections 524 and 727 of the Bankruptcy Code to enforce the discharge injunction entered in his bankruptcy case. (Dkt. 2-4 at pp. 1–30). The bankruptcy court held that Eichor's adversary proceeding was "a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)." (Dkt. 2-7 at p. 53). The Wylys argue that the bankruptcy court's jurisdictional holding was incorrect as to "the parties' dispute over ownership of [Eichor's house]" because "[d]isputes based on state-created rights (such as disputes over the ownership of real property) are not core proceedings." (Dkt. 3 at p. 17).

The Court disagrees with the Wylys. The fact that a dispute is based on a "state-created right," as the Wylys put it, does not alone remove that dispute from the category of core bankruptcy proceedings. Rather, the Bankruptcy Code provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Furthermore, "[a] 'core proceeding' includes enforcement of the discharge, there being few matters as 'core' to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code." *In re Haynes*, No. 13-8370, 2014

WL 3608891, at *7 (Bankr. S.D.N.Y. July 22, 2014); *see also In re Harlan*, 402 B.R. 703, 710 (Bankr. W.D. Va. 2009) ("A debtor's claim to enforce the discharge injunction is a core proceeding arising under the Bankruptcy Code.") (quotation marks omitted). The definition of "core proceeding" also includes, as Eichor points out, determinations as to the dischargeability of particular debts; objections to discharges; and determinations of the validity, extent, or priority of liens. 28 U.S.C. §§ 157(b)(2)(I), (b)(2)(J), (b)(2)(K). And the Bankruptcy Code further empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions. 11 U.S.C. § 105(a).

The bankruptcy court did not err in concluding that it had jurisdiction to award ownership of Eichor's homestead to Eichor. The Wylys' actions in state court raised the question of whether they had a valid pre-bankruptcy lien on Eichor's homestead, and Eichor filed an adversary complaint alleging that the Wylys had violated his Chapter 7 discharge injunction; these matters fell within the definition of "core proceeding." Moreover, the Bankruptcy Code broadly authorized the bankruptcy court to issue judgments that were necessary and appropriate to facilitate the fresh start provided to Eichor by the discharge injunction. *In re Walker*, 180 B.R. 834, 840 (Bankr. W.D. La. 1995) ("Remedial statutes such as the Bankruptcy Code are to be liberally construed in favor of the debtor in order to better facilitate the debtor's fresh start. . . . Discharge is the legal embodiment of the fresh start.") (quotation marks omitted). Accordingly, the Wylys have not shown that the bankruptcy court lacked the power to award title of Eichor's house to Eichor.

*—The Wylys' lawsuit violated Eichor's discharge injunction.*

The Wylys next contend that their actions "did not violate the discharge injunction as a matter of law" because their suit against Eichor "was purely in rem." (Dkt. 3 at pp. 20–22). The Court disagrees.

As the Wylys correctly note, a discharge injunction like Eichor's "does not prevent a creditor from enforcing a valid, pre-bankruptcy lien or security interest against property that has been retained by the estate or by the debtor after discharge." *Id.* at 841. Instead, the discharge injunction "is designed to protect a debtor only from in personam liability." *Id.*; *see also In re Simmons*, 765 F.2d 547, 556 (5th Cir. 1985) ("[A] creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid [may] ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt."). "Therefore, [an] in rem action on [a] secured claim survive[s] the bankruptcy." *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986). Citing these principles, the Wylys argue that their state-court suit against Eichor did not violate Eichor's discharge injunction because the suit "was purely in rem" and did not seek any relief against Eichor in personam. (Dkt. 3 at pp. 20–22).

The Court finds this argument unconvincing. "[D]ischarge establishes a legal right not to pay a debt and safeguards against harassment by the creditor." *In re Walker*, 180 B.R. at 840. "Accordingly, a creditor's ability to proceed in rem against a debtor's collateral post-discharge requires that the creditor have a perfected security interest in the collateral." *In re Loe*, No. 12-4108, 2013 WL 6628960, at *8 (Bankr. N.D. Tex. Dec. 17, 2013). "[A] creditor may not proceed in rem against a debtor's property interest if the

creditor did not have a lien before the bankruptcy case and the debtor's personal liability has been discharged." *Id.* Furthermore, "[n]umerous cases have held that a party who exercises its in rem rights nonetheless violates [the discharge injunction] if *either* the purpose *or* the objective effect of the action is to coerce the [bankruptcy] debtor into paying the debt personally." *In re Mejia*, 559 B.R. 431, 442–43 (Bankr. D. Md. 2016) (emphasis in *Mejia*). Here, the bankruptcy court found as a matter of fact that the three agreements whereby the Wylys purported to purchase Eichor's house were actually "disguised loans and not the purchase of an asset." (Dkt. 2-7 at p. 56). The bankruptcy court further found that the Wylys "held no security interest in [Eichor's house], there was no perfected lien, and [the Wylys] merely held an unsecured claim." (Dkt. 2-7 at p. 60). These fact findings, to the extent that the Wylys challenge them, were not clearly erroneous; and they establish that the Wylys in fact had no right to proceed in rem against Eichor's homestead post-discharge. The objective effect, and perhaps the purpose, of the Wylys' state-court suit was to coerce Eichor into personally paying a discharged unsecured claim. Accordingly, the Wylys' state-court suit against Eichor, even if it is appropriately characterized as an in rem proceeding, violated Eichor's Chapter 7 discharge injunction.

—*The state-court default judgment was void.*

The Wylys next contend that, "[f]or the same reasons that [their] actions did not violate the discharge injunction, the state court's default judgment was not void under 11 U.S.C. § 524(a)(1)." (Dkt. 3 at p. 22). The Court has rejected the Wylys' argument that their state-court suit did not violate the discharge injunction and consequently rejects their

argument that the state-court judgment was not void under Section 524 of the Bankruptcy Code.

11 U.S.C. § 524 essentially "declares that any judgment rendered on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor." *In re Walker*, 180 B.R. at 841–42 (quoting 3 Collier on Bankruptcy, ¶ 524.01). "As *Collier* states, 'section 524(a) contains an injunction prohibiting creditors holding discharged debts from: (1) commencing an action on such debt; (2) continuing such an action already initiated; or (3) employing process to collect on such debt, *e.g.*, through the use of garnishment or attachment writs.'" *Id.* at 842 (quoting 3 Collier on Bankruptcy, ¶ 524.01) (brackets omitted). The bankruptcy court has the power to declare a violative post-petition state-court judgment void, and it is "unequivocally unnecessary" for the bankruptcy debtor to raise the discharge injunction as an affirmative defense or even to respond in the state-court action. *Id.* Since the Wylys' state-court suit violated Eichor's Chapter 7 discharge injunction, the bankruptcy court properly declared the state-court default judgment void.

> —*The bankruptcy court's civil contempt finding is supported by the evidence.*

Finally, the Wylys contend that, "[e]ven if [they] had violated the discharge injunction, the evidence is insufficient to show by clear and convincing evidence that they are liable for civil contempt." (Dkt. 3 at p. 23). The Court disagrees.

"To determine whether a party should be held in contempt for violating a discharge injunction, courts employ an objective standard, and contempt is appropriate when there is

not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *In re McKinney*, No. 21-50046, 2022 WL 1632156, at *2 (Bankr. N.D. Tex. Apr. 28, 2022) (some quotation marks omitted; quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019)). Under *Taggart*, three elements must be proven for a court to hold a party in contempt: "(1) the party violated a definite and specific order of the court requiring him to refrain from performing particular acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct." *In re McKinney*, 2022 WL 1632156 at *2 (ellipses omitted; quoting *In re City of Detroit, Michigan*, 614 B.R. 255, 265 (Bankr. E.D. Mich. 2020)). The bankruptcy debtor (or other moving party) must prove "at least" the first two elements by clear and convincing evidence. *In re City of Detroit*, 614 B.R. at 265–66. "Clear and convincing evidence" is evidence "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case." *Hornbeck Offshore Services, L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013).

      Eichor carried his burden before the bankruptcy court. The Wylys concede the second element: they had knowledge of Eichor's Chapter 7 discharge order when they obtained the state-court default judgment against Eichor. (Dkt. 3 at pp. 23–27). And as to the first element, the bankruptcy court found that the Wylys' state-court lawsuit violated Eichor's discharge injunction. The bankruptcy court's findings that the purported sale of Eichor's home was really a series of disguised loans; that the Wylys had no security interest in Eichor's homestead; and that the Wylys had no right to proceed in rem against Eichor's

homestead post-discharge were supported by clear and convincing evidence. The structure of the purported sale of Eichor's homestead alone constituted such evidence—the Texas Constitution voids "[a]ll pretended sales of the homestead involving any condition of defeasance[.]" Tex. Const. art. XVI, § 50; *see also In re Perry*, 345 F.3d 303, 313 (5th Cir. 2003) ("A condition of defeasance permits the seller to reclaim the title to the property conveyed after the loan is repaid."); *In re Cadengo*, 370 B.R. 681, 692 (Bankr. S.D. Tex. 2007) ("A common example of a condition of defeasance is an option to repurchase at the end of the purported sale."). Moreover, despite the supposed sale, Eichor never transferred title to the Wylys, and he and his family continued to live in the house and pay the property taxes. (Dkt. 2-8 at pp. 32–33, 45, 59, 109, 114–15, 189–91).

The same clear and convincing evidence also establishes the third element. With regard to the third element, the question is whether there was an "objectively reasonable basis for concluding" that the Wylys' conduct might have been lawful under Eichor's discharge injunction. *Taggart*, 139 S. Ct. at 1801. The bankruptcy court found that the Wylys had no objectively reasonable basis for concluding that their post-discharge actions were proper. (Dkt. 2-7 at p. 62). This finding was not clearly erroneous, and the bankruptcy court's handling of the matter exhibited careful consideration of the facts and evidence. Notably, the bankruptcy court evidently took into account the Wylys' counsel's confessed unfamiliarity with bankruptcy law and did not award damages to Eichor that predated "the first full month that the [Wylys] were given actual notice of [Eichor's] claim by [Eichor's]

counsel[.]" (Dkt. 2-7 at p. 62).[2] The bankruptcy court also declined Eichor's request for an award of punitive damages against the Wylys. (Dkt. 2-7 at p. 62). *See In re Mooney*, 340 B.R. 351, 361 (Bankr. E.D. Tex. 2006) (noting that a punitive damage award for violation of a discharge injunction must be based on "malevolent intent" or "willful and malicious" conduct).

The bankruptcy court's finding that Eichor had established entitlement to a contempt finding under *Taggart* by clear and convincing evidence was not clearly erroneous. Accordingly, the Court will not reverse the bankruptcy court's civil contempt finding against the Wylys.

## IV. CONCLUSION

The Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas, on August 29, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[2] As previously mentioned, after the Wylys served Eichor with their state-court lawsuit, Eichor's counsel sent a letter to the Wylys' counsel stating that the Wylys had "violated the discharge injunction issued by the U.S. Bankruptcy Court by continuing with the intervention action." (Dkt. 2-5 at p. 17). Eichor's counsel's letter further explained that Eichor would not make an appearance in the Wylys' state-court action; that "[a]ny decision by the Brazoria District Court may be void[;]" and that, if the Wylys continued to prosecute their state-court action, Eichor's counsel would file an adversary proceeding that would "seek monetary damages, including attorneys' fees, against Mr. and Mrs. Wyly for their willful violation of the discharge injunction granted to Mr. Eichor." (Dkt. 2-5 at p. 18).